101 F.3d 107
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
ATRIUM PLAZA HEALTH CARE CENTER, INC., Petitioner-Cross-Respondent,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent/Cross-Petitioner.
 Nos. 95-4118, 95-4132.
 United States Court of Appeals, Second Circuit.
 March 8, 1996.
 
 Appearing for Petitioner-Cross-Respondent: Joel Spivak, Dinerstein & Lesser, Commack, NY.
 Appearing for Respondent-Cross-Petitioner: Deborah E. Shrager, National Labor Relations Board, Washington, DC.
 N.L.R.B.
 ORDER ENFORCED.
 Present: GRAAFEILAND, MESKILL, WINTER, Circuit Judges.
 
 
 1
 Atrium Plaza Health Care Center, the successor owner of a nursing home, petitions for review of a May 25, 1995 order of the National Labor Relations Board finding that Atrium violated sections 8(a)(1) and 8(a)(5) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1) and (5), by unilaterally altering the terms and conditions of employment at the nursing home. The National Labor Relations Board cross-petitions for enforcement of its order. Although Atrium concedes that it refused to pay the vacation and sick pay benefits that accrued prior to Atrium's purchase of the facility, it argues that, contrary to the findings of the Board, it was under no obligation to do so. We disagree and enforce the Board's order.
 
 
 2
 In February 1994, Atrium purchased the nursing home and entered into a Memorandum of Agreement with the New England Health Care Employees Union, District 1199, SEIU/AFL-CIO (the "Union"). The agreement provided, inter alia, that "[a]ll terms, conditions and language" of an expired contract between the Union and a predecessor employer, Winthrop Health Care Center, shall "remain in effect except as modified herein." Under the terms of the Winthrop agreement each employee accrued one to four weeks vacation time each year based upon seniority and an employee could not use his vacation time until his anniversary date (the date on which the employee was hired). Each employee was also entitled to earn up to ten sick days per year, unused sick leave being paid to the employee on the employee's anniversary date. Although the Memorandum of Agreement between Atrium and the Union did not purport to modify the vacation and sick pay benefits provided under the Winthrop contract, Atrium nevertheless announced that all employees would have a new common anniversary date: February 8, 1994 (the day after Atrium purchased the facility). As a result, employees became ineligible for vacation time until the following year, accumulated vacation and sick leave was "erased from the books," and employees became ineligible for future sick leave to the new anniversary date. Because the agreement between Atrium and the Union did not alter the vacation and sick leave portion of the Winthrop contract, Atrium's unilateral decision to alter vacation and sick leave benefits violates section 8(a)(5) and (1).
 
 
 3
 Atrium's claim that the Winthrop contract was merely a "framework" for its contract with the Union is utterly without merit. Although a successor employer is not obligated to adopt a predecessor's labor contract, NLRB v. Babad, 785 F.2d 46, 49 (2d Cir.), cert. denied, 479 U.S. 830 (1986), here Atrium clearly chose to do so. As such it is bound by the contract's terms. See id., at 50.
 
 
 4
 Atrium's contention that the Union waived its right to seek reimbursement for the accrued benefits is equally meritless. Atrium alleges that there were "extensive negotiations and discussions about the issues of sick and vacation pay" and that, in the course of these discussions, Atrium representatives "made it clear" that Atrium would not assume Winthrop's obligations in this regard. This assertion is not only unsupported in the record but is also directly contradicted by the plain language of the contract.
 
 
 5
 Nor does the fact that the Union has filed a claim in state court against the facility's former receiver for the accrued benefits at issue undermine the Union's claim against Atrium. See Consolidated Coal Co., 307 N.L.R.B. 69, 72 (1992) (proceedings under the National Labor Relations Act stand independent of the Union's right to pursue other legal remedies, although dual proceedings could have relevance at the compliance stage of the proceedings).
 
 
 6
 We therefore find that there is substantial evidence to support the Board's finding that Atrium violated sections 8(a)(1) and 8(a)(5) of the Act. See NLRB v. Donald E. Hernly, Inc., 613 F.2d 457, 461-62 (2d Cir.1980) (court will grant deference to Board's findings where such findings are supported by substantial evidence) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474 (1951)). The order of the Board is therefore enforced.